Citation Nr: 1706039 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 08-02 176 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Los Angeles, California


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent from September 1, 2005, and a rating in excess of 20 percent from May 12, 2012, for degenerative disc disease (DDD) with arthritis and spondylosis of the thoracolumbar spine.

2. Entitlement to an initial rating in excess of 10 percent for left wrist strain, with a history of fracture.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Rothstein, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1978 to August 2005.

This appeal to the Board of Veterans' Appeals (Board) arose from a July 2006 rating decision in which the RO, inter alia, granted service connection for DDD with arthritis and spondylosis of the thoracic and lumbar spine and for left wrist strain, and assigned an initial noncompensable rating, effective September 1, 2005, for each disability. In September 2006, the Veteran filed a notice of disagreement (NOD) with the initial ratings assigned for these disabilities. A statement of the case (SOC) was issued in January 2008, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) later in January 2008. In March 2009, the RO issued a supplemental SOC (SSOC), continuing a noncompensable rating for each the DDD of the thoracic and lumbar spine and the left wrist strain.

As the Veteran disagreed with the initial ratings assigned following the award of service connection for DDD of the thoracic and lumbar spine and for left wrist strain, the Board has characterized the claims in light of the distinction noted in Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disability).

In September 2010, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO. A transcript of that hearing is of record.

In August 2011, the Board remanded the claims on appeal to the RO, via the Appeals Management Center (AMC), in Washington, D.C., for further action, to include development of the evidence.

On remand, in an October 2012 rating decision, the AMC, inter alia, partially granted the Veteran's claim for a higher rating for DDD of the thoracic and lumbar spine, assigning a 20 percent rating, effective May 16, 2012 (the date of VA examination). Additionally, in a January 2013 rating decision, the AMC, inter alia, again partially granted the Veteran's claim for a higher rating for DDD of the thoracic and lumbar spine, assigning a 10 percent rating, effective September 1, 2005. In that January 2013 rating decision, the AMC also partially granted the Veteran's claim for a higher rating for left wrist strain, assigning a 10 percent rating, effective September 1, 2005. However, inasmuch as higher ratings for these disabilities are available, and the Veteran is presumed to seek the maximum available benefit for a disability, the claims for a higher rating remain viable on appeal (inasmuch as higher ratings are available before and after May 16, 2012 for DDD of the thoracic and lumbar spine, the claim concerning DDD of the thoracic and lumbar spine has been characterized to encompass the staged ratings assigned, as reflected on the title page). See Hart v. Mansfield, 21 Vet. App. 505 (2007); AB v. Brown, 6 Vet. App. 35 (1993).

The Board notes that in the October 2012 rating decision, the AMC also granted service connection for lumbar radiculopathy of the left lower extremity and for lumbar radiculopathy of the right lower extremity, and assigned an initial 20 percent rating, effective May 16, 2012, for each disability. In addition, the Board notes that in the January 2013 rating decision, the AMC also granted service connection for carpal tunnel syndrome of the left wrist and assigned an initial 10 percent rating, effective January 11, 2013. The Veteran has not disagreed with any aspect of those decisions, to include the assigned ratings or effective dates.

In January 2013, the RO issued a supplemental SOC (SSOC) reflecting the denial of an initial rating in excess of 10 percent prior to May 16, 2012, and a rating in excess of 20 percent since May 16, 2012, for DDD of the thoracic and lumbar spine, as well as an initial rating in excess of 10 percent for left wrist strain, and returned these matters to the Board for further appellate consideration.

In November 2014, the Board again remanded the claims for higher initial ratings to the AMC, for further action, to include additional development of the evidence. After taking further action, the AMC continued to deny the claims (as reflected in a March 2015 SSOC) and returned the matters to the Board for further appellate consideration. 

In December 2015, the Board again remanded the claims for higher initial ratings to the agency of original jurisdiction (AOJ), for further action, to include additional development of the evidence. After taking further action, the AOJ continued to deny the claims (as reflected in a July 2016 SSOC) and returned the matters to the Board for further appellate consideration.

This appeal is now being processed utilizing the Veterans Benefits Management System (VBMS) and Virtual VA, paperless, electronic claims processing systems.

For reasons expressed below, the claims on appeal are, again, being remanded to the AOJ. VA will notify the Veteran when further action, on his part, is required.


REMAND

Unfortunately, the Board finds that further action in this appeal is warranted, even though such will, regrettably, further delay an appellate decision on these matters.

A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions, and imposes upon VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

As previously mentioned, in December 2015, the Board remanded the claims on appeal to the AOJ for further action. Specifically and in pertinent part, the Board instructed the AOJ to obtain and associate with the claims file the Veteran's VA vocational rehabilitation records as well as VA treatment records from the VA Medical Center (VAMC) in West Los Angeles, California, dated since January 2013, following the procedures set forth in 38 C.F.R. 3.159(c).

In March, May, and July 2016, the AOJ made requests for the Veteran's VA vocational rehabilitation records. However, a review of the claims file reveals no responses to the AOJ's requests, and that vocational rehabilitation records were not obtained. Instead, a July 2016 VA Report of General Information (VA Form 27-0820) shows only that a person from the VA Vocational Rehabilitation and Employment Division in Los Angeles stated that the Veteran's file had "disappeared." In a January 2017 post-remand brief, the Veteran's representative asserted that the appeal should be remanded again to obtain the Veteran's VA vocational rehabilitation records. The Board agrees.

In this regard, the Board notes that, consistent with the procedures set forth in 38 C.F.R. 3.159(c), in requesting records from Federal facilities, efforts to obtain such records should continue until VA concludes that the records sought do not exist or that further efforts to obtain such records would be futile. See 38 C.F.R. 3.159(c)(2) (2016). To that end, there is no indication in the claims file that the Veteran's VA vocational rehabilitation records do not exist or that further efforts to obtain those records would be futile. Thus, as the AOJ failed to fully or substantially comply with the Board's remand directives, another remand of these matters is required. See Stegall, supra. Therefore, a remand of these matters is warranted for the AOJ to undertake appropriate action to obtain the Veteran's VA vocational rehabilitation records. If, after continued efforts to obtain the Veteran's VA vocational rehabilitation records, the AOJ concludes that the records do not exist or that further efforts to obtain them would be futile, the AOJ should provide the Veteran with oral or written notice of that fact. See 38 C.F.R. § 3.159(e). 

The Board further notes that with regard to updated VA treatment records, it is unclear whether the AOJ obtained them. In this regard, a review of the claims file shows that VA treatment records were associated with the claims file in January 2016, however, these records are only from January 2013. The claims file contains no record of the AOJ's request(s), if any, for the updated VA treatment records. The claims file reflects that the Veteran has been receiving treatment from the n West Los Angeles VAMC, and that records from that facility dated through January 2013 are associated with the file. However, it is not clear to the Board whether the AOJ failed to obtain updated records, or whether the updated records simply do not exist because the Veteran has not received VA medical treatment since January 2013. 

Therefore, to ensure that all due process requirements are met and that the record is complete, on remand, the AOJ should undertake appropriate action to obtain and associate with the claims file all outstanding VA treatment records, to particularly include any records dated since January 2013, as more recent records may exist. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). In requesting such records, the AOJ must follow the current procedures prescribed in 38 C.F.R. § 3.159(c) with regard to requests for records from Federal facilities.

The AOJ should also give the Veteran another opportunity to provide additional information and/or evidence pertinent to the claims on appeal, explaining that he has a full one-year period to respond. See 38 U.S.C.A. § 5103(b)(1) (West 2014); but see 38 U.S.C.A. § 5103(b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). In its letter, the AOJ should specifically request that the Veteran provide, or provide appropriate authorization to obtain, any outstanding, pertinent private (non-VA) records.

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information and, if necessary, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159.

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159. However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted prior to adjudicating the claims on appeal.

Accordingly, these matters are hereby REMANDED for the following action:

1. Undertake appropriate action to obtain any existing VA vocational rehabilitation records or folder. Follow the procedures set forth in 38 C.F.R. § 3.159(c) as regards to requesting records from Federal facilities-to include continuing efforts to obtain the records until it is determined that the records do not exist or that further efforts to obtain them would be futile. All records and/or responses received should be associated with the claims file.

If the records cannot be obtained after reasonable efforts have been made, issue a formal determination that such evidence does not exist or that further efforts to obtain such evidence would be futile, which should be documented in the claims file. Also, follow the procedures prescribed in 38 C.F.R. § 3.159(e) with respect to notifying the Veteran and his representative of the inability to obtain the records.

2. Obtain from the West Los Angeles VAMC (and associated medical facility(ies)) all outstanding, pertinent records of VA evaluation and/or treatment of the Veteran, to particularly include records dated since January 2013. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with regards to requesting records from Federal facilities. All records and/or responses received should be associated with the claims file.

3. Send to the Veteran and his representative a letter requesting that the Veteran provide sufficient information and, if necessary, authorization, to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, all outstanding, pertinent private (non-VA) records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

4. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. All records/responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

5. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall, 11 Vet. App. at 271.

6. After completing the requested actions, and any additional notification and/or development deemed warranted, readjudicate the claims on appeal in light of all pertinent evidence (to include all evidence added to the VBMS and/or Virtual VA file(s) since the last adjudication) and legal authority.

7. If any benefit sought on appeal remains denied, furnish to the Veteran and his representative an SSOC that includes clear reasons and bases for all determinations, and afford them an appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2016).